THE STATE OF KANSAS v. FATTY OSWALD AND FRANK KEPPING.

No. 11071.

1. GAMBLING ACT OF 1895 — *providing and using dice for playing "craps" for money or property, an offense under.* While the mere ownership and possession of dice does not constitute an offense, to provide, use, and induce others to use them in a game of "craps," by which money or property is won or lost, is an offense under section 1, chapter 151, Laws of 1895.

2. ———— *and the dice and chips are a gambling device.* The dice and chips so used are a gambling device within the meaning of the statute.

3. ———— *count of information held to charge but single offense under.* The setting up and keeping of a gambling device, and enticing and permitting persons to gamble therewith, when charged to have been perpetrated by the same persons at the same time, constitute but a single offense, for which but one penalty can be inflicted.

4. ———— *information under, for setting up gambling device or permitting gambling therewith, need not describe place.* In an information for setting up or keeping a gambling device or for enticing others to gamble therewith, it is sufficient to aver that the offense was committed in the proper county and state; no more particular averment of place being necessary.

5. EVIDENCE EXAMINED — *and held sufficient.* The testimony examined and held to be sufficient to sustain the conviction.

Appeal from Reno District Court. M. P. Simpson, Judge. Opinion filed June 11, 1898. *Affirmed.*

*L. C. Boyle*, Attorney General, and *Lucius M. Fall*, County Attorney, for the State.

*H. Fierce* and *W. H. Lewis*, for appellants.    *Prigg & Williams*, of counsel.

JOHNSTON, J.    This was a prosecution of Fatty Oswald and Frank Kepping for violations of the law relating to gambling.    The information contained three counts, on the first and second of which the defendants were convicted, and upon the third count there was an acquittal.

In substance, the first count charged that the defendants set up and kept, in Reno county, a gambling device composed of dice and the throwing thereof, adapted, devised and designed for the purpose of playing games of chance commonly called "craps," for money and property, and that they induced and permitted persons to bet money, and play with and upon this gambling device the game of "craps," against the defendants; and that through this gambling device, money and property were lost and won by chance. In the second count it was alleged, among other things, that the defendants set up and kept a place, on the second floor of a building situated on lot 35 North Main Street, in the City of Hutchinson, Reno County, as a common gaming room, a place to which persons "were permitted by the defendants to and were accustomed to, and did resort for the purpose of gambling, and to play and bet at and upon a certain game of cards, a gambling device commonly called 'poker,' and at and upon a certain gambling device commonly called 'craps,'" as well as other games of chance, with cards and dice, for money and property; and that "money and property was then and there upon said games of chance won and lost."

An attack is made upon the first count of the information, and it is contended that it is insufficient in that it does not particularly describe the place in which the gambling device was set up and kept and the games played. In the same connection it is urged that it states two separate offenses and is therefore bad for duplicity.

The objection that the place is not particularly described is not well taken. The statute defining the offense charged in the first count does not make the keeping of the place an ingredient, and therefore it is sufficient to charge that it is committed in the county and state. *Keith v. The State*, 90 Ind. 89; 1 Bishop's New Criminal Procedure, §372. Laws of 1895, ch. 151, §1. The keeping of a place is made an ingredient of one of the offenses prohibited by the statute, and there a particular description is necessary. The second count of the information, based on that provision, definitely describes the place, and is therefore not open to such an objection. Neither can it be held that two offenses are charged in the first count. The setting up and keeping of a gambling device and enticing and permitting persons to gamble therewith, when charged to have been perpetrated by the same persons at the same time, constitute a single offense, for which but one penalty can be inflicted. *Hinkle v. Commonwealth*, 4 Dana (Ky.) 518; 2 Bishop's Criminal Procedure, §489. The same rule applies to the averments in the second count of the information.

The claim that no offense was charged or shown to have been committed cannot be sustained. It is argued that one who had or sold dice would not be guilty of setting up or keeping a gambling device within the meaning of section 1, chapter 151, Laws of 1895 (Gen. Stat. 1897, ch. 100, §256). While dice

may be used for purposes other than gambling, they are adapted, and have always been largely used, for gaming or for determining by chance. The mere ownership and possession of a device practically adapted to gaming does not constitute an offense under the statute, but the setting up or keeping of such a gambling device is the element of criminality. The information charged the defendants with the throwing of dice, and this would seem to be fairly included in the matter of setting up or keeping to which the statute refers. We think the correct view of the offense charged in the first count was taken by the trial court. It instructed the jury that it was essential to show '' that the defendants set up or kept a gambling device· composed of dice and the throwing thereof, and that such gambling device was adapted, devised and designed for the purpose of playing a game of chance for money or property, and that it was so used.'' It is true, as contended, that dice and the throwing thereof in gaming, is not specifically mentioned in the statute as a gambling device ; but it is manifest from the language employed that the Legislature intended to prohibit the use of all gambling devices and gaming by which money or property is lost or won. It appears that the defendants furnished the dice, chips, and other facilities for gaming, and witnesses state that the defendants '' banked the game.'' There is testimony that they sold chips, and that when the players lost they lost to the defendants, and that when they won they won from the defendants. The witnesses stated that they played against the defendants ; and the testimony shows that considerable money was won and lost on the games of '' craps '' which were set up and managed by the defendants. We think there is abundant testimony to sustain the convictions.

It is contended that there was a variance between the description of the place in the second count of the information and the proof as to the place kept by the defendants. Some spoke of the place as Beem's Drug-store and others as the store of the Midland Drug Company ; but the testimony shows beyond any doubt that all the winesses referred to the same place, and that it was the place described in the information.

Objections were made to rulings upon questions of testimony, but we find nothing substantial in them, nor in the questions raised upon the instructions given to the jury. We think the court fully and fairly submitted the case to the jury, and that there is no cause to complain of the instructions.

The judgment will be affirmed.